```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/4/06
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
VERENA RIVERA-POWELL, FRANCESCA CASTELLANOS,
GEORGINA SANCHEZ, AND MARIE SIERRA

                Plaintiffs,

   - against -

THE NEW YORK CITY BOARD OF ELECTIONS, THE
STATE OF NEW YORK, AND FRANKLIN HESS

                Defendants.
------------------------------------------X

MEMORANDUM AND ORDER

06 Civ. 6843 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Verena Rivera-Powell ("plaintiff"), an attorney who seeks to become a candidate for Judge of the Civil Court of the City of New York from the 7th Municipal District, New York County, filed this action on September 6, 2006 asserting claims under 42 U.S.C. § 1983 against defendant New York City Board of Elections ("the Board"). Plaintiff subsequently filed an Amended Complaint ("Am. Compl.") on September 9,[1] a Second Amended Complaint on September 10,[2] and a motion to further amend the

---

[1]     The Amended Complaint added plaintiffs Francesca Castellanos, Georgina Snachez [sic], and Marie Sierra, each of whom is "voters and supporters of Ms. Powell's [sic] candidacy for civil court judge." Am. Compl. ¶ 4. It also added as a defendant the State of New York. Plaintiff has now determined not to pursue any claims against the State in this action, and specifically has withdrawn her constitutional challenge to New York Election Law § 16-116.

[2]     The Second Amended Complaint seeks to add plaintiffs Lydia Cabrera, Jael Castellanos, and Mercedes Valasquez, each of whom, in addition to the additional named plaintiffs in the Amended Complaint,

complaint for a third time on September 24.³ As will be discussed infra, there is an issue about whether the summons was properly served with the initial complaint or thereafter. However, the iteration of the complaint has no ultimate bearing on the resolution of this case and thus we will only reference the Amended Complaint which was filed as of right and which we determined at a September 11 hearing was the operative complaint.

On the same day the complaint was filed, plaintiff also filed a Motion for Summary Judgment and Injunctive Relief.⁴ On September 7, Judge Crotty, sitting in Part I, signed an order to show cause, setting oral argument on plaintiff's motion for a preliminary injunction for September 11, 2006 and denying plaintiff's request for a temporary restraining order. Judge Crotty also rejected plaintiff's motion for summary judgment, finding that it had been filed prematurely. Oral argument was then held before this Court on September 11. In accordance with

---

in addition to the additional named plaintiffs in the Amended Complaint, purports to represent as a class "all citizens who have been denied the right to designate candidates for public office because of intentional and illegal actions on the part of the New York City Board of Elections and the State of New York." Second Am. Compl. ¶ 8.

³ The Fourth Amended Complaint added as defendant "unknown persons". The Court cannot find a Third Amended Complaint, either by reference, by hard copy, or by soft copy on the Court's electronic filing database. We therefore assume that no such complaint exists.

⁴ An additional memorandum of law in support of this motion was filed on September 10.

2

a schedule set at that conference, the Board filed a Motion to Dismiss the complaint on September 21. Plaintiff's opposition to defendant's motion to dismiss was filed on September 24, 2006.

On September 22, non-party Franklin Hess ("Hess") moved the Court to intervene as a defendant. Hess, a registered voter eligible to vote in the 7th Municipal Civil Court District of New York County election, had filed objections to plaintiff's petitions to place her on the ballot. Plaintiff has indicated that she is not opposed to Mr. Hess' intervention.[5]

A full-day evidentiary hearing was held on October 3, 2006 at which the plaintiff, the Deputy Executive Director of the Board, George Gonzalez, and a member of the Board, Frederic M. Umane, testified.

For the reasons set forth below, plaintiff's motion for a preliminary injunction is denied and the complaint is dismissed.

---

[5] See plaintiff's letter to the Court, dated September 25, 2006. As such, we need not discuss whether intervention would be proper. Moreover, individual objectors appear to be necessary parties to an action such as this. See Matter of Butler v. Hayduk, 336 N.E.2d 423 (N.Y. 1975).

## BACKGROUND

The facts which are summarized below are essentially not in dispute. On July 11, 2006 plaintiff Ms. Rivera-Powell filed six designating petitions (Ex. B)[6] for candidacy in the September 12, 2006 primary for the office of Judge of the Civil Court of the City of New York from the 7th Municipal District, New York County. Am. Compl. ¶ 6-7. Plaintiff's petitions were accompanied by a Designating Petition Cover Sheet (Ex. A). Plaintiff's petition was a so-called Popkin petition,[7] i.e., the petitions were filed on behalf of more than a single candidate, with some signatures potentially eligible to support only one candidate, and others potentially eligible to support more than one. The number of candidates listed on the six petitions (other than those running as delegates to the Democratic convention for the 72nd Assembly District) totaled ten.

On July 13, 2006 another Popkin petition, denominated as "218", was filed (Ex. C). Ms. Rivera-Powell's name was listed as one of seven candidates on that petition. Two business days later, on July 17, 2006, Hess filed written objections to plaintiff's petition, alleging that plaintiff did not have sufficient signatures to qualify for the ballot. Am. Compl. ¶

---

[6] All references to exhibits are to those marked at the evidentiary hearing held on October 3, 2006. Plaintiff's exhibits are denominated by letters and defendant's by numbers.

[7] Popkin v. Umane, 22 App. Div.3d 613, 801 N.Y.S.2d 774 (2d Dept. 2005).

4

11. He also served and filed in New York County Supreme Court an order to show cause and a petition seeking to invalidate plaintiff's petition. Proposed Defendant-Intervenor's Motion to Intervene ¶ 2 ("Hess Mot.").

Following a meeting of the Board, a letter dated July 25, 2006 was sent to plaintiff's contact person to inquire as to whether plaintiff wanted to claim the 218 petition by filing an amended cover sheet. Ex. D. Plaintiff did not respond to that letter.

The Board met on August 3 to consider, inter alia, Hess' challenge to plaintiff's petition and plaintiff's position that Hess' challenge was untimely filed, as it was beyond the three day challenge period allowed under New York State Election Law § 6-154. Am. Compl. ¶¶ 9, 12. Specifically, plaintiff asserted that since she did not claim the 218 petition, her petition was complete on July 11, making July 14 the deadline for any objection. Id. ¶¶ 10-11. The Board determined under the specific facts presented that the challenge was timely filed. Plaintiff's counsel (plaintiff herself did not attend) did not make any argument to the Board that the report of the Clerk of the Board, which had found that plaintiff did not have sufficient signatures,[8] was incorrect in any respect. Consequently, having concluded that the objections were timely filed, the Board

---

[8] Plaintiff was approximately 70 signatures shy of the required 1,500.

unanimously adopted the Clerk's report, and plaintiff was removed from the ballot.

Plaintiff then brought an application supported by an affidavit in New York Supreme Court seeking to restore her name to the ballot, id. ¶ 15, naming the Board and Hess as respondents. Plaintiff's application was rejected by Justice Jacqueline W. Silberman of the New York State Supreme Court on August 9, 2006 for failure to comply with the petition verification requirement set out in New York State Election Law § 16-116. Am. Compl. ¶ 16. Hess' cross motion to dismiss, joined in by the Board, was granted. Supplemental Memorandum of Law in Support of Plaintiff's Motions Pursuant to Rules 56 and 65 of the Federal Rules of Civil Procedure Ex. A. Significantly, at no point did plaintiff seek to file a verified petition, seek reargument, or appeal Justice Silberman's decision to the Appellate Division.

In her federal complaint, plaintiff maintains that the Board's decision to entertain defendant Hess' challenge was an "arbitrar[y] and capricious[] violat[ion of] New York State election law" that was done "because of [plaintiff's] race [African-American] and in violation of her First and Fourteenth Amendment rights." Am. Compl. ¶¶ 13-14. Specifically, plaintiff claims a denial of her due process and equal protection rights.[9]

---

[9] The Fourth Amended Complaint also seeks to add a claim that multiple plaintiffs' Fifteenth Amendment rights were violated by this alleged violation as well. Fourth Am. Compl. ¶ 7. Though

## DISCUSSION

### I. Service of Process

Defendant argues that this Court lacks jurisdiction over the Board because they were improperly served by plaintiff. Specifically, the Board maintains that it was served a copy of the complaint without an accompanying summons, as required by Rule 4 of the Federal Rules of Civil Procedure, and that a summons (without a complaint) was not served until two days ago. Counsel for plaintiff, Mr. Mitchell, disputes this contention; he states he left a copy of the summons with the original complaint.

No proof of service has been filed with this Court. While the person effecting service of process must file proof of such service with the court, failure to make proof of service does not affect its validity. See Fed. R. Civ. P. 4(l).

Given Mr. Mitchell's representation and in the absence of any testimonial or affidavit evidence submitted by the Board, we find that sufficient proof of service of a summons with a

---

not entertained, this claim would fall for the same reason: there was no underlying violation of § 6-154. More broadly, the claims of the additional plaintiffs stand or fall on the determination of whether Ms. Rivera-Powell is entitled to be listed on the ballot. If she has met the preconditions to appear on the ballot, the additional plaintiffs will have the opportunity to vote for her. The inverse is true as well.

Plaintiff also suggests that various Democratic politicians did not wish her candidacy to succeed. The objector counters with a variety of suggestions that plaintiff herself was manipulating the system to maximize her electoral appeal. Since there has been no evidence presented of a Board agenda, we refrain from including a description of these charges and counter-charges.

complaint has been made and the Court has jurisdiction over the defendant. Cf. 1 Moore's Federal Practice § 4.100 (3d ed. 2006).

## II. Preliminary Injunction Standard

Plaintiff demands that defendant be enjoined from excluding her from the ballot for the Democratic Party nomination for Vacancy #13 for office of Judge of the Civil Court of the City of New York from the 7th Municipal District for the November, 2006 election.[10]

A heightened pleading standard applies where the injunction sought either (1) stays governmental action taken in the public interest pursuant to a statutory scheme, or (2) will either alter the status quo or else will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits. Torres v. New York State Bd. of Elections, 2006 WL 2505627, *14 (2d Cir. 2006); Jolly v. Coughlin, et al., 76 F.3d 468, 473 (2d Cir. 1996)(citing Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995)). In such cases, the movant must make a "clear" or "substantial" showing of a likelihood of success, id., and a strong showing of irreparable harm. Doe v. New York University, 666 F.2d 761, 773 (2d Cir. 1981). See also Lincoln

---

[10] Am. Compl. ¶ 3. Plaintiff also seeks an injunction to be placed on the September 12, 2006 primary ballot. Id. That issue is moot.

Cercpac v. Health and Hospitals Corp., 920 F.Supp. 488, 494 (S.D.N.Y. 1996).

The relief sought here would clearly alter the status quo by declaring plaintiff eligible for placement on the November general election ballot where the Board of Elections had made the determination that she was ineligible. Moreover, the relief sought – placement on the ballot – would clearly provide plaintiff with "substantially all the relief" she seeks. As such, this heightened pleading standard applies.

### III.  New York State Election Law § 6-154

Having determined that the plaintiff has obtained jurisdiction over the Board, we must turn to the issue of whether defendant's allowance of Hess' objections constituted a violation of New York's election law. Because we find that no such violation was committed, plaintiff's federal law arguments cannot survive.

Section 6-154 reads in pertinent part:

2. Written objections to any certificate of designation or nomination or to a nominating or designating petition or a petition for opportunity to ballot for public office … may be filed by any voter registered to vote for such public office and to a designating petition or a petition for opportunity to ballot for party position or a certificate of substitution, a certificate of acceptance or a certificate of declination relating thereto by any voter enrolled to vote for such party position. Such objections shall be filed with the officer or board with whom the original petition or certificate is filed within three days

> after the filing of the petition or certificate to which objection is made…

There is no disagreement that the requirement that objections to a petition and certificate of designation of a candidate be made within three days after filing is mandatory. See, e.g., Application of Smith, 91 N.Y.S.2d 357, 362 (N.Y. Sup. 1949). However, this case does not present a simple issue of counting to three. Rather, the issue before the Board was when should the counting begin.

To fully appreciate the issue faced by the Board, a little background is necessary. At the stage involved here, a candidate's filing to obtain a position on the ballot involves two documents. The first is a designating petition for candidacy (such as Exs. B and C containing the voter signatures) and the second is a designating petition cover sheet (such as Ex. A) which notes by number the petitions which it claims.

Approximately two years ago, according to the testimony of Board Member Umane, the Board relaxed its then-rule of automatically rejecting designating petitions which were unaccompanied by the required cover sheet – a defect which had formerly led to the prospective candidate's removal from the ballot without the opportunity to correct the defect. Instead, the Board adopted a more lenient policy, whereunder the Board would inquire of a candidate after a petition was filed without

10

the required cover sheet whether he or she wished to claim the petition (and the signatures) by submitting an amended cover sheet.

Here, the Board met shortly after the additional petition (number 218)[11] was filed and directed its counsel to make such an inquiry of plaintiff, which it did via letter of July 25, 2006 (Ex. D). As noted earlier, plaintiff did not respond to that letter and did not claim the additional petition (Ex. C).

At its meeting on August 3, the Board was confronted with the conflicting claims of plaintiff and objector Hess. Plaintiff argued that since she had not claimed the 218 petition, her documentation was therefore complete on July 11. As a result, plaintiff asserted that Hess' challenge had to have been filed by July 14. Consequently, plaintiff maintained that Hess' filing on July 17 (one business day later) was untimely and in violation of § 6-154. Hess, on the other hand, claimed that given that the 218 petition was filed with Ms. Rivera-Powell's name on it, he had reasonably relied on the filing date of July 13, and therefore that his July 17 objections were timely.

---

[11] The six petitions filed on July 11, 2006 bore numbers 206, 208, 210, 212, 214 and 216.

11

As the discussion at the Board's August 3 hearing[12] makes clear, the Board members were attempting to balance the interests of the candidate and the objector, keeping in mind not only the relaxation of their earlier rule, but also the possibility of manipulation of the system by both candidate and challenger alike (by the filing of a petition not intended for actual use). After hearing argument, the Board voted 9 to 0 to adopt the Clerk's report which concluded that plaintiff did not have sufficient signatures to petition onto the ballot. That vote implicitly found that the challenge was timely. As such, plaintiff's name was removed from the ballot.[13]

Having viewed the original six petitions, as well as the later-filed 218 petition (which is similar in format and, indeed,

---

[12]   The tape of the relevant portion of the Board's August 3 hearing was received into evidence over plaintiff's objection as Ex. 1. A draft transcript was marked for identification as Ex. H.

[13]   In University of Tennessee v. Elliott, 478 U.S. 788 (1986), the Supreme Court held that the factual findings of a state administrative proceeding acting in a judicial capacity are to be given the same preclusive effect by a federal court in a subsequent § 1983 action as they would be entitled in the state's courts. Id. at 799. However, New York does not give preclusive effect to the factual determinations made by the Board of Elections. See, e.g., Coven v. Previste, 389 N.Y.S.2d 225 (N.Y. Sup. 1976)(only the courts, and not the Board of Elections, may consider facts not appearing on the face of a petition in determining its validity). Moreover, New York law is clear that the Board of Elections, when it passes on the sufficiency of designating and nominating petitions, is confined to "ministerial," not judicial, duties. See, e.g., Bendarsh v. Cohen, 267 App. Div. 133, 45 N.Y.S.2d 1 (1st Dept.), appeal denied 292 N.Y. 578 (1943). Thus, we are not bound to accept the factual determination of the Board of Elections.

essentially identical in form to some of the original petitions), we conclude that the Board's decision that an objector was entitled to rely on the 218 petition as having been filed on behalf of Ms. Rivera-Powell was eminently reasonable and well within the powers delegated to the Board by the State Board of Elections.[14] It must be remembered that this decision was made in the context of the liberalization of Board policy just discussed, which resulted in the 218 petition being considered presumptively valid.[15] It should also be noted that this scenario presented an issue of first impression to the Board.

In sum, there was no violation of the three day filing requirement for challenges to candidates' petitions. Under all the circumstances, including plaintiff's choice to use a *Popkin* petition, the evident similarity between the 218 petition and the original six, and the Board's treatment of the 218 petition as

---

[14] At the hearing, Mr. Umane testified that the Board could have determined that the benchmark for commencement of the three day challenge period would not begin until the potential candidate had had the opportunity to respond to the Board's letter and had decided whether to claim the additional signatures. In Mr. Umane's view, the Board thus considered their ultimate decision as a "middle road" approach that balanced the interests of the candidate and the objector.

[15] It should be noted that Ms. Rivera-Powell could have claimed the 218 petition which, as she acknowledged at the October 3, 2006 hearing, contained signatures which she could have counted towards her required number. The outcome of plaintiff's strategic choice was not known, and could not have been known, to the Board until the time to respond to its July 25 letter expired. Similarly, given the Board's liberalization policy, an objector would have had no way of knowing that Ms. Rivera-Powell would ultimately decide not to rely on the 218 petition.

presumptively valid under its practices, we find that the Board's decision to commence the counting of the three day challenge period from the filing of the 218 petition, and thus to accept the Hess challenge as timely, was consistent with state law and well within the Board's delegated authority.[16]

Having found no violation of state law, plaintiff's due process, equal protection and First Amendment claims necessarily fall.[17]

## CONCLUSION

Because plaintiff's allegations are insufficient to establish a clear or substantial showing of a likelihood of success on the merits, the request for a preliminary injunction is denied.[18]  Moreover, having found no violation of state law,

---

[16] We note that regardless of the Board's acceptance of the objection, had Ms. Rivera-Powell obtained 1,500 valid signatures, she would have been included on the ballot. Here again, a strategic choice was made by plaintiff or her counsel not to challenge the Clerk's report which found her to be approximately 70 signatures short.

[17] Given our finding that there was no violation of state law – which is the necessary predicate of plaintiff's § 1983 claims – it is not necessary to reach her constitutional claims. However, it should be noted that there was absolutely no evidence, direct or circumstantial, of intentional discrimination. Indeed, there is no basis upon which to conclude that the members of the Board even knew that the plaintiff was African-American, as she was not present at the Board hearing, nor was any mention made at the hearing of this fact.

[18] We note, without discussing further, that this case might well present a situation in which Pullman abstention would be appropriate. All the Second Circuit factors seem to be met: (1) there is an unclear state law issue, (2) the resolution of which

14

there are no viable federal claims to support federal jurisdiction, and therefore the complaint is dismissed.

**IT IS SO ORDERED.**

Dated:   New York, New York
         October 4, 2006

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

would determine the federal issue, and (3) the interpretation of which would avoid or modify the federal constitutional claim. See Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus, 60 F.3d 122, 126 (2d Cir. 1995). Moreover, the two policy considerations behind Pullman abstention - the desire to avoid federal-state conflict and to avoid unnecessary constitutional rulings - might well outweigh the harm caused by the delay and expense associated with abstention. See Pineman v. Oechslin, 637 F.2d 601, 603 (2d Cir. 1981). We would have considered the issue of abstention in more depth, and with greater scrutiny, had plaintiff not waited to withdraw her constitutional challenge to New York Election Law § 16-116 (see note 1, supra) until the conclusion of the hearing late yesterday.
   This Pullman analysis seems particularly apt given the availability of a state court system which has been structured by specially designating judges to hear election law cases on an expedited basis. Had plaintiff simply followed the verified petition requirement of § 16-116 of New York's Election Law, her claim that state election law had been violated by the Board could have been decided by mid-August.

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Plaintiffs

Stephen T. Mitchell, Esq.
67 Wall Street - Suite 2211
New York, NY 10005


Counsel for Defendants

Stephen Kitzinger, Esq.
Office of the Corporation Counsel
City of New York
Law Department
100 Church Street
New York, NY 10007

Steven H. Richman
General Counsel, Board of Elections in the City of New York
32 Broadway, 7th Floor
New York, NY 10004

Arthur W. Grieg, Esq.
401 Broadway, Suite 1902
New York, NY 10013